# Court of Appeals, State of Michigan

# ORDER

In re Jackisch/Stamm-Jackisch Minors

Docket No.    357001

LC No.        17-133994-NA

Jane E. Markey
Presiding Judge

Douglas B. Shapiro

Amy Ronayne Krause
Judges

The Court on its own motion orders that the February 1, 2022 opinion is hereby AMENDED to correct a clerical error. The opinion is modified on page 2, with a minor, non-substantive change and is amended as follows:

The original opinion read:

Although the initial petition was authorized, it was dismissed the Department of Health and Human Services (DHHS) failed to provide discovery.

The new opinion reads:

Although the initial petition was authorized, it was dismissed because the Department of Health and Human Services (DHHS) failed to provide discovery.

In all other respects, the February 1, 2002 opinion remains unchanged.

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

February 7, 2022

Date

Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JACKISCH/STAMM-JACKISCH, Minors.

FOR PUBLICATION
February 1, 2022
9:10 a.m.

No. 357001
Genesee Circuit Court
Family Division
LC No. 17-133994-NA

Before: MARKEY, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J.

Respondent[1] appeals as of right the order terminating her parental rights to CJ, ASJ, and MSJ,[2] pursuant to MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions of adjudication), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. FACTUAL BACKGROUND

In March 2017, Child Protective Services (CPS) filed a petition to remove the children from respondent's care. The petition alleged that respondent, the children's father, JS, and the children were living in the basement of a relative's home. The relative monitored their food, laundry, and bath time; the children were observed to be dirty; and the family had no other place to live. Both MSJ and ASJ were in the hospital at the time. ASJ was born with one functioning lung and her heart on the wrong side of her body and needed special medical treatment. Respondent repeatedly refused to engage in education regarding ASJ's care and did not follow the dosage requirements for her breathing treatments. MSJ was diagnosed with failure to thrive; respondent failed two 24-hour supervised care blocks of care for him because she missed his feedings, and respondent was not responsive to MSJ's needs and did not properly feed him or change his diapers. The petition also noted that there had previously been a substantiated

---

[1] Although the children's father, JS, was a respondent to the termination proceedings, he is not a party to this appeal. Therefore, "respondent" refers to respondent-mother.

[2] Another child, IF, is not at issue in this appeal.

allegation that respondent had committed unspecified domestic violence against CJ. Although the initial petition was authorized, it was dismissed the Department of Health and Human Services (DHHS) failed to provide discovery.

In February 2018, a second petition was filed. The second petition reiterated and expanded upon the concerns of medical neglect, noting in addition that respondent had admitted to medical staff that she found it "difficult to keep things straight" and "was unable to report which medications she is administering to [ASJ] and how often they are being administered." Medical staff also opined that respondent had "become increasingly difficult to work with." Respondent was observed to "smack the children in the head and the children flinch when she raises her hand." Respondent threatened CJ with an ice-cold shower if he did not eat dinner, and respondent threatened ASJ with hot sauce when she used a swear word. A teenaged niece of JS was residing "off and on" in the home and assisting with the children, but the niece had serious and inadequately-treated mental health issues, including threats to burn down the home, breaking windows and threatening to stab her parents in their sleep, and an attempt to commit suicide by drinking bleach while watching the children. Drugs and drug paraphernalia were observed to be within reach of the children. Respondent's jaw was broken at some point, apparently by JS in the while home as evidenced by blood splatter, and she variously claimed she lied that JS broke her jaw or that her jaw had been broken at work. Respondent and JS apparently both engaged in physical altercations with each other. Respondent "shot off her gun outside her home because a car full of men was parked in her driveway," and respondent kept "her gun in a hole in the couch" where it was accessible to the children. The trial court authorized the petition, and the children were placed in separate foster homes.

Over the course of the next year, respondent participated in several services, but failed to follow through with others. She completed parenting classes, but she continued to demonstrate difficulty with parenting and understanding the children's needs. A psychological evaluation indicated that respondent's intellectual difficulties would make it difficult for her to understand and apply learned techniques, and her "prognosis for independent parenting [was] poor." Respondent was referred to mental health counseling and substance abuse evaluation on multiple occasions, but she failed to follow through or verify that she participated. She was also referred to mental health services for MSJ, but she attended few of the individual sessions. Respondent "was informed of all medical appointments for [ASJ] and has failed to attend these appointments." She did, however, complete a domestic violence counseling class. Furthermore, although she obtained housing that could have been suitable, it needed repairs. She depended entirely on the income of her then-partner, MF.

As of June 2019, respondent had missed ten scheduled parenting time visits. Respondent struggled to remain engaged with the children when she did show up for parenting time, often asked to end sessions early, brought inappropriate sweet snacks despite knowing that ASJ had dental issues, and sometimes said inappropriate things to the children. During this time, respondent became pregnant with her youngest child, IF,[3] and when hospitalized with complications from the pregnancy, she left against the advice of medical staff and did not return

---

[3] As noted, IF is not at issue in this appeal.

for a follow-up appointment. When respondent gave birth to the child, the baby was placed with her father, MF. The children struggled with behavioral issues and regressed in potty training. As of June 2019, respondent missed nineteen random drug screens, tested positive for THC on six occasions, and tested positive for cocaine on one occasion.

As of a supplemental petition for termination filed in July 2020, ASJ required only a single medication, but respondent was "still unable to remember the treatment plan for at home." A FOIA request had revealed that the police were summoned to the home where respondent and MF were residing on numerous occasions, mostly for fights between the two of them, but the nature of those fights was not clear and, insofar as we can determine, was never fully explained. At the termination trial, it was revealed that respondent had punched someone for asking her to wear a mask at a store, and respondent reported that she sometimes got so angry she blacked out. MF and respondent both testified that they only had a single physical altercation, a single police contact, and no domestic violence issues. He further testified that he was attempting to help respondent with her "anger issues." Respondent claimed to be seeing a therapist, but she had not provided any verification that she was engaged in therapy.

Respondent continued to show an inability to manage the needs of all three children, or even one child at a time. However, respondent was compliant with drug screens and was removed from a drug court program to focus on her mental health. Respondent continued to struggle with parenting time, missed 26 visits, often asked to leave visits 20 minutes early, struggled to appropriately discipline the children, and struggled to keep the children engaged. The children's behavior worsened—CJ displayed extreme and violent behaviors toward himself and others, ASJ engaged in bullying, and MSJ was extremely dysregulated.

Following a termination hearing, the trial court terminated respondent's parental rights as described above, reasoning in its conclusion:

> In view of all the above, the Court finds that [respondent] failed to adequately follow and comply with, complete, and/or benefit from the services and elements of the treatment plan and, thus, was unable to rectify the barriers that brought the children into care over three years ago. In particular, progress that [respondent] made toward rectifying the conditions that led to the children's removal still failed to adequately address the main barriers that her mental health, parenting skills, and domestic violence posed to the children's care. For instance, her interactions with the children and choices put the children at risk as she struggled with recognizing and meeting their basic and special needs. Furthermore, [respondent] did not show enough that she can provide a long-term, safe, stable housing environment for the children within a reasonable amount of time. In addition, there was no indication that [respondent] adequately benefitted from any of these services, satisfactorily addressed the issues that caused the children's removal, or showed sufficient progress toward demonstrating her ability to care for the children's extensive special needs as she continued to be overwhelmed and struggled with her parenting all three children and understanding their respective cues. Moreover, [respondent] has unsuccessfully participated in several domestic-violence classes, had a long history of engaging in domestic violence, and even

commented at one time that she was in an unsafe environment/relationship with her then fiancé (now husband) [MF].

The trial court found by clear and convincing evidence that, as noted above, MCL 712A.19(b)(3)(c)(*i*), (g), and (j) were satisfied. The trial court further stated that it did not doubt that respondent loved the children, but it was in the best interests of the children to terminate respondent's parental rights, citing:

> 1) the parents' parenting ability; 2) the children's need for permanency, stability, finality, and consistency; 3) the advantages of their respective foster homes over the parents' home; 4) the parents' history of domestic violence; 5) the parents' compliance with the case-service plan; 6) the children's special needs; 7) the length of time the children have been in foster care (i.e., over three years); 8) the children's well-being while in care; 9) the high likelihood of adoption by the respective foster parents, who can provide proper care and custody to the children; and 10) all of the caseworkers, LGAL, and experts opining for it.

This appeal followed.

## II. STANDARD OF REVIEW

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "We review the trial court's determination for clear error." *Id*. We also review for clear error a trial court's decision that termination is in a child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). If we conclude that termination is supported by at least one statutory ground, additional grounds for the trial court's decision need not be considered. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Even if conditions improved in the months before the termination hearing, a trial court may look to the totality of the evidence to determine whether a parent accomplished meaningful change in conditions that led to adjudication. *In re Williams*, 286 Mich App 253, 272-273; 779 NW2d 286 (2009).

## III. ANALYSIS

Respondent argues that the trial court erred by finding that clear and convincing evidence supported termination of her parental rights. We disagree.

As an initial matter, we conclude that the trial court erred to the extent it based termination on respondent's involvement in domestic violence because the record fails to establish that respondent was a perpetrator. The fact that respondent was or is a *victim* of domestic violence may not be relied upon as a basis for terminating parental rights. *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011). This is not to say that being a victim of domestic violence necessarily precludes termination of parental rights. To the extent such a victim is also a perpetrator, the commission of domestic violence is an appropriate concern. Similarly, termination may be

-4-

"properly based on the fact that [a] respondent's own behaviors were directly harming the children or exposing them to harm." *Id*.; see also *In re Ellis*, 294 Mich App 30, 34-35; 817 NW2d 111 (2011). However, the record in this case offers nothing more than vague references to "domestic violence between" respondent and MF or JS. The critical question is *who is the abuser* (or abusers), and without that information, mere references to domestic violence in the abstract cannot be used to support termination. The record clearly shows that respondent was a victim of domestic violence, but it contains nothing beyond hints or suggestions that she may also have been a perpetrator. Hints and suggestions are not enough. If petitioner believes that respondent was a perpetrator of domestic violence, it must say so explicitly and provide evidence in support of that conclusion. The trial court erred in relying on respondent being a victim.

Nevertheless, even striking trial court's inappropriate references to domestic violence, we find the record amply supports the trial court's findings that statutory grounds for termination were established by clear and convincing evidence. The trial court terminated respondent's parental rights pursuant to MCL 712A.19(3)(c)(*i*), (g), and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> \* \* \*

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . .

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> \* \* \*

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> \* \* \*

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Regarding MCL 712A.19(3)(c)(*i*), there is no question that more than 182 days had elapsed since the issuance of the initial dispositional order on April 20, 2018, and the termination order issued on March 31, 2021. The children were originally brought into care for, in relevant part, medical neglect and improper supervision. Those issues were never satisfactorily resolved, and the evidence indicated no reasonable likelihood that they would be rectified within a reasonable time.

Multiple caseworkers testified that respondent struggled to properly supervise the children during parenting time. Respondent struggled to handle multiple children at once, struggled to engage with them during visits, and often ignored one child if focusing on another. Respondent struggled with appropriate discipline, and she would initiate discipline that was inappropriate and would exacerbate the children's behavioral problems despite instructions from caseworkers and therapists. Respondent would say inappropriate things to the children and struggled to understand the children's emotional cues. Although respondent participated in more than three years of services, she never progressed to unsupervised parenting time. As the trial court observed, the children had exceptional behavioral, emotional, and social needs; meanwhile, a psychological evaluation indicated that respondent had a poor prognosis for ever becoming an independent parent. Therefore, the trial court did not err by finding that respondent could not provide proper supervision to the children and would not be able to do so within a reasonable time given the children's ages.

Furthermore, respondent was unable to properly administer ASJ's medications and missed feedings for MSJ. Although those specific issues were rectified by the termination hearing, the totality of the circumstances suggested that respondent had not rectified the condition of medical neglect. See *Williams*, 286 Mich App at 272. Although respondent knew that ASJ had severe dental issues, she continued to bring sticky and sweet food that hurt ASJ's teeth to parenting time, and she did not stop until the court ordered her to do so. When respondent was hospitalized due to complications with her last pregnancy, she left the hospital against the advice of medical staff and did not return for follow-up appointments. Respondent also initially struggled to attend mental health counseling, and, at times, allowed her mental health medications to lapse. Respondent struggled to follow through with the direction of therapists regarding MSJ's care and repeatedly missed therapy appointments for MSJ despite being warned of the negative impact of missing such appointments. Respondent also minimized the severity of CJ's behavior and testified at trial that her strategy of dealing with him was to ignore his "fits." Respondent testified that none of the caseworkers or therapists provided her with tips and techniques to help with her parenting, which directly contradicted testimony that she was given specific education to understand and respond to her children's trauma. Overall, respondent showed a consistent pattern of failing to understand, appreciate, and respond appropriately to the medical and mental health needs of herself and her children. Therefore, the trial court did not err by finding that the condition of medical neglect continued and would not be rectified within a reasonable time given the children's ages.

Because termination of parental rights must be supported by at least one statutory ground, we need not address the additional grounds for termination. *In re HRC,* 286 Mich App at 461.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Douglas B. Shapiro

-6-